Good morning, Your Honors. Katie Hurlbrink on behalf of Anthony Navarro. In this case, the government pled and proved that Mr. Navarro had driven drugs across the border one time. The government did not try to prove that he had done it more than once. And under Supreme Court precedent, the government bore the burden on that issue. Thus, the district court simply should have sentenced Mr. Navarro as a one-time importer, disregarding the possibility that he had committed additional drug crimes. Yet, near the beginning of the sentencing hearing, the court began to discuss other importers who had done it more than once, stating that might be his case. And the court continued to emphasize questions about how many times he did it, classifying the number of loads as a massive factor, and how many times did they do it as one of the biggest factors that comes into play in a case like this. Was the sentencing range wrong for someone who, where the conviction was just based on one event? Does Your Honor mean the guidelines range? Yes. No. The guidelines range was undisputed. The only argument at sentencing was what sentence was due under the 3553A factors. And the judge went below the guidelines range, right? That's correct, Your Honor. But the Fifth Amendment case law does not speak in terms of where the judge ended up on the scale of possible sentences. It doesn't talk about did the judge go above or below the guidelines. Did he give a relatively high or relatively low sentence? And to be clear, in the context of our district, this was not a relatively low sentence. It was years above what probation recommended. But the case law speaks – oh, I'm sorry, I don't want to interrupt. Well, it just seems to me the judge was responding to the counsel's argument that essentially Mr. Navarro should be sentenced in the same way as someone who had qualified for other sentencing reductions, and the judge was just responding to that argument. I think that – I understand Your Honor's reading of the record there, but to the extent that the judge was giving Mr. Navarro a higher sentence than other people because of speculation that he committed uncharged crimes, that's still a Fifth Amendment violation. To the extent he was giving Mr. Navarro a higher sentence than he would have because he shifted the burden to Mr. Navarro concerning uncharged crimes, that is still a Fifth Amendment violation. And I think we can see here that the guidelines range is not dispositive in the actual case law. The – Mitchell discusses the question presented there as a question of whether in determining facts about the crime which bear upon the severity of the sentence, the court can in fact draw adverse inferences from silence. And so that was the problem here, is that the court in comparing him to other importers, for example, he was defining – But how do we separate this from just – I mean, I don't think you dispute that he didn't meet the criteria for the safety valve in minor role, right? That's absolutely correct, Your Honor, yes. So at that point, that's why I think the judge was saying that he got a higher sentence than other people. I definitely believe that the court was in part responding to the guidelines, but at ER 22, we see the court specifically saying that – so he's comparing Mr. Navarro to other people who've gotten minor role or safety valve. He says if they proffer, then theoretically you have an idea of what they did and how And did they make one load or two loads or three loads? And what did they do? And he says that that is a massive factor because – and this is key – putting aside the impact it has on the guidelines. They are being sentenced for what they did and for their involvement in the offense. And this is somebody – I don't know what his role is. I don't know how many times he did it. And that's not the only time that he emphasized the number of crossings. But isn't saying, I don't know how many times he did it, I don't know his role, just a way of saying, I don't know if he had a minor role? As to the extent the court was discussing the actual crime pled and proved here, we're totally fine with that. He was totally – it was completely fine for the judge to cite, you know, for example, how much time did he have to think about it or, you know, how much was he paid. Those kinds of factors did have to do with the sentence pled and proved. The way the court crossed the line was by speculating without evidence that Mr. Navarro may have committed this crime more than once. And I – Where does he do that? I mean, what he's saying is, I can't make a finding on minor role. Where does he say – speculate that he might have done – that he did this more than once and that's why his sentence is going to be what it is? Sure, Your Honor. So I am going to quote the court on ER-31. But before I do, I just want to quickly establish something. And that is that if the court was truly holding the government to its burden to prove any uncharged crimes, then the factor of how many times he did it should have been as mitigated as possible here. It should have been one. The government – But where was the government – I mean, all of this transcript is the judge responding to Navarro's counsel's arguments that he should be treated as someone who qualified for minor role in safety valve reductions. And I don't see the government arguing that his sentence should be increased because he actually engaged in more than the proven incident. And when the judge actually talks about the basis for the sentencing, it's quite straightforward. Your Honor, so the defense was asking for a lower sentence, but there are two ways you can ask for a lower sentence. You can say that a mitigating factor applies, so you should impose a lower sentence, for example, because the client is young. Or you can say that the government has not met their burden to prove an aggravating factor. And in the face of that kind of argument, it is not permissible for the district court to then shift the burden to the defendant. I mean, that's what we have in Mitchell. But is there anything that suggests that the judge found an aggravating factor? Yes, Your Honor. And so, as noted, if the court had really held the government to its burden, then the factor of how many times he did it should have been as mitigated as possible. It should have been one. But what he says on ER 31, he's wrapping up the 3553A analysis, and he says that he's mitigating factors in this case as there are in most of them. The biggest, perhaps one of the biggest factors that comes into play in a case like this is what did the person do, how many times did they do it. And so there, he's citing how many times did they do it as a factor that is not mitigated  Similarly, at the end of the day, he's not mitigating. But that doesn't mean he found an aggravating factor. I mean, I think it would have been a fact — everything would be lower if he met the minor role adjustment. But he didn't. Yes, Your Honor. But even still, the court, as he said at ER 22, was considering the number of crimes, even putting aside the impact it has on the guidelines, because he wanted to sentence my client for what he did. And so, again, we see on ER 11, the court is responding to the argument that Mr. Navarro is young and that there are no aggravating factors. But if you're right about this, then wouldn't everyone who doesn't get the minor role but the conviction is only based on one event end up with the minor role anyway? No, Your Honor. And to be clear, the defense counsel said at sentencing, I know his sentence is going to be higher because he can't establish the minor role guidelines because the guidelines are higher. Right. And then counsel argued and said, but I still want you to give him the same sentence you gave to someone who qualified for minor role and safety valve, and the judge said, I can't. And then it seems to me counsel is saying, can you please explain that to my client? And the judge did, right? And then counsel made the argument again, and everything that you quote seems to me to be in response to the argument from defense counsel that the judge should essentially sentence Mr. Navarro in the same way that someone who actually qualifies for safety valve and minor role. Well, Your Honor, even if that is the case, even if he's responding to the defense, he is still not allowed to cite as a basis for his sentence, as one of the facts bearing upon the severity of the sentence, that he may have done it more than once. And with that, I'd like to reserve the remainder of our time. Thank you. Good morning, and may it please the Court. My name is Kelly Reese on behalf of the United States. The Court should affirm Navarro's 80-month sentence for the importation of methamphetamine for two reasons. First, the Court thoroughly explained its reasoning for imposing a below-guideline sentence after considering Navarro's argument under 3553A that he should receive a variance based on the fact that he was a minor participant in the offense. And second, the Court did not consider Navarro's exercise of his Fifth Amendment right to remain any adverse inferences from that silence in fashioning the appropriate sentence here. Turning to the first point, the Court sufficiently explained its reasoning for rejecting Navarro's argument that he should receive essentially an equivalent variance under 3553A because the circumstantial evidence supports the finding that he was a minor participant. The Court pointed to Amendment 794 to the sentencing guidelines that outlines the factors a court can consider when determining whether a mitigating role adjustment is appropriate. And those factors were at the forefront of the Court's mind when it found that there was not enough information in the record to support a minor role adjustment here. So, the Court focused on what Navarro did, how many times he did it, how much planning was involved, the financial stake that he had in the offense, as well as the amount of time he had for reflection. And there was no evidence in the record as to any of those factors. Did the government put in any evidence on Roehl? No, Your Honor. The government, in its sentencing papers, acknowledged that the defendant failed to meet his burden of showing that he was substantially less culpable than the average participant in the offense. And so, the Court had before it essentially just the facts of the offense, that Mr. Navarro drove a vehicle loaded with 100 pounds of methamphetamine into the United States from Mexico. But there was no information about, you know, his financial stake. There was no information about his role in this organization. And so, the Court explained its reasoning for the 88-month downward variance from the properly calculated guidelines of 168 to 210 months. And the Court noted some of the factors that Navarro argued in his argument for a variance, including Navarro's youth, his lack of role models growing up. The Court also mentioned his lack of convictions, as well as his strong employment history given his age as a mechanic. Now, the Court did note that this case was aggravated given the type and quantity of narcotics. This was more than 100 pounds of methamphetamine. But the Court was clear that it wouldn't guess as to Navarro's role, given the lack of information in the record to support a finding that he was a minor participant. The Court said, I don't know what his role was. And the Court was unwilling to make those inferential leaps that Navarro was arguing in favor of in his sentencing papers and then at the sentencing hearing. Oh, sorry. Go ahead. Well, okay. The one thing that gave me pause in this whole sentencing was that the Court seemed to be really trying to pressure him to cooperate and to make himself eligible for safety valve or perhaps a motion by the government. And you know, I don't think defense counsel quite made this argument, but it seemed like the judge was, he was not happy. I won't go further than that at this point, but he was not happy that this defendant was not disclosing what he knew about the crime and others involved in the crime. And he doesn't expressly say this, but it seemed to me like that kind of tainted the sentencing. We sat here this week and we had a situation where someone actually did cooperate and was scared for his life. And you know, I think it just kind of troubles me that the failure to cooperate, say if you're dealing with a cartel or something like that, should not be held against the person in any way. But there was a lot of colloquy at the beginning about, are you sure, are you sure you don't want to do this? You know you're going to have a big sentence if you don't do this, and I found that troubling about this sentencing. So to kind of your Honor's first point about the Court sort of suggesting to the defendant whether he wanted to seek the minor role in safety valve adjustments, I think everyone here wanted to make sure that Navarro understood that his decision not to provide any information about the offense would impact the amount of time he spent in custody. And so at the outset of the hearing, the Court says, am I understanding correctly that he's not seeking minor role or safety valve? And Navarro's counsel even says, you know, I've advised him as to this, but maybe hearing it from your Honor will perhaps change his mind. And so I think the Court here wanted to make very clear to him that this was an avenue that was open to him. However, the Court also made clear that he didn't have to speak to anyone. He didn't have to talk to the government about the offense, and it was his right not to. But by not doing so, it would impact the amount of time he spent in custody, because the Court would not have enough information to find that he was a minor participant. As to whether that sort of tainted the overall proceeding, it's clear, based on both the 88-month variance and the Court's colloquy when imposing the sentence, that it did consider those mitigating factors and equities in Navarro's favor in deciding that that level of variance was appropriate here. So the Court did talk about his youth, his troubled childhood, and all of those things in sort of deciding that the 80-month sentence ultimately was the most appropriate in this case. I think your opposing counsel is arguing that when the judge said, I don't know how many times he did it, that's speculating that he did it more times because he was really only convicted of one time. And so how do you respond to that? I think that's her strongest argument, that even if it's a little vague, it really is suggesting that there were more times and that there was no evidence to support that. Yeah. So it's important to look at the comments regarding, I don't know how many times he did it, within the context of the minor role analysis. And it's common for courts in the Southern District of California, when examining the role of those people who have imported drugs and acted as a courier, how many times they've acted as a courier in the past. And that can go to their knowledge of the drug trafficking organization, the amount of planning, the amount of trust that organization places in them. So the Court was using it more as a shorthand to those role factors. And by its explicit words, the Court did not say, I'm assuming he did more than just the one time that he imported methamphetamine. The Court says, I don't know. And that's the common theme throughout this sentencing hearing, is that there was not enough information for the Court to find that. And so ultimately, the Court did not hold Navarro's silence against him. As I mentioned, the Court said at multiple points that it was his right to not speak to the government. And he didn't have to say anything about the offense. I'll speak very briefly about the standard of review here. Navarro did not object to any aspect of the sentencing before the lower court. And so therefore, the plain error standard would apply here. And Navarro has not shown any error, let alone a plain error. And therefore, the Court should affirm the sentence. Thank you. Thank you, counsel. Ms. Herbrink, you had some time. Thank you, Your Honor. So I heard Your Honor's concern about the pressure to talk to the government to get these guidelines enhancements at the beginning of the hearing. And that really is the gravamon of the Mitchell rule, is that the failure to cooperate should not be held against you when determining facts about the crime that bear on the severity of the sentence. Now, the problem I have, though, is that we've also said, and the Court's made clear, that the minor role and safety valve reductions are permitted. And they require information cooperation. And then in this particular case, I see defense counsel below essentially asking the Court to speak directly to Mr. Navarro, to explain to Mr. Navarro what the implications would be of not availing himself of those options. So it just seems to me now to then say on appeal that the judge's response to those arguments and invitation from defense counsel to talk about this is a bit of a, it takes, it seems to me, it takes the district court's responses to arguments and requests from defense counsel out of context. Your Honor, I don't recall a specific request from... Well, I'm reading it right here on ER 12. You know, the judge says, as a result of the actions he's taking, which he has the right to do, he's going to double his sentence. And counsel says, I understand that. I really appreciate the Court making those comments at the outset, perhaps hearing it directly from you, as opposed to, and then the judge goes on to speak directly to Mr. Navarro. I see, Your Honor. Well, even if the Court was just trying to get the defendant to Mr. Navarro to get those guidelines reductions, even still, you can tell from his repeated references to the number of offenses, how many times he did it, that, you know, talking about other importers who did it more than once and saying that might be his case, that this continued to occupy the Court's mind and influence the way that he viewed the 3553A factors. I see I'm out of time. All right, thank you very much. U.S. v. Navarro will be submitted. We've previously submitted U.S. v. Egan's, and we'll take up U.S. v. Yepes.
judges: WARDLAW, FRIEDLAND, SUNG